Good morning. I notice you appear to have a helper this morning. I do and I'm real excited to have him here. Your Honors, my name is George Saltero. I'm a Criminal Justice Act attorney from Tucson. I represent Mario Osorio-Cola. I'd like to reserve two minutes please for a rebuttal. Your Honors, on page 20 and page 22 of the government's brief, the government admits to a Doyle violation. On page 20, the government admits their questions were not appropriate as the defendant had not yet testified. And then on page 22, the government brief, they admit that in cross-examination of Mr. Osorio, their questions were too broad. Your Honor, we believe that a pure question of law should receive de novo review. Well, isn't the only situation that I see that's different from that, you know, obviously when there's a Doyle violation, everyone's ears perk up as far as that goes. But apparently, defense counsel in the trial, they didn't perk up and there were no objections. Yes. So, isn't it in plain error then? Judge, I was defense counsel for trial. Okay. Well, then let's assume that you had a good reason not to object then, and so why aren't we in plain error? Your Honor, there was not a good reason. I missed the objection. Well, that's kind of extra, extra territorial of the record at this point. So, yes. Judge, there wasn't a deliberate, there wasn't a deliberate waiver. There was a failure to the objection. What we're arguing with a pure question of law, it should be de novo, but I'm very prepared to argue the other standard, and Judge, there was error absolutely. The government's brief, they admit error at 22, page 20 and page 22, and Judge, the... But then they come full circle and say, well, the defendant testified anyway, so then these really were inconsistent statements. So it really, to the jury, it doesn't matter when they heard them or when they come in. So why isn't that a... Good question, Judge. Why doesn't, why don't we consider that argument? Good question. At page 20, Your Honor, they say, yes, we shouldn't have done it because Mr. Osorio hadn't yet testified. A, before he even got on the stand, we questioned his credibility and implied guilt through silence. Secondly, once that breach began to occur, we were forced to put Mario on the stand, Mr. Osorio. So I would say, yes, some substantial rights... Well, but that's not in the record either, because there wasn't an objection in the first place. That's right. So there's no objection, and then saying that you were forced to testify because of that, if that was true. A lawyer learns, Judge. Judge... How did this testimony, it was really only relevant for impeachment as a practical matter, as far as I can see, because it didn't tend to show that your client had assaulted the officer. In what way, other than, like, clearly a technical violation, in what way did it harm your client? He did a pretty good job. You got him acquitted of the two greater charges. Yes. Thank you, Judge. It was a weak case. It was a weak case for the government. But getting back to my question, in what way did the admission of this statement harm your client? Because we're under plain error review, as I think you conceded to Judge Callahan. In what way was your client harmed? Because ultimately that's what we have to look at here. Yes, Judge. Judge, Miranda, there's a line of questions that come out of Doyle, and each one of them say that silence isn't going to be penalized. They were impeaching his credibility, and therefore implying guilt. And then they hammered it home in closing argument as well, the guilt. But again, at that point, there was a whole trial that had gone on. You'd done a good job of, you know, working their people over. As you point out, they had a weak case. Sadly, human trials are human. They're not perfect. And the way the Supreme Court has established our law, you don't have to have perfection. It's a question of measuring the quantum of damage when an error has occurred, unless it's structural. And we don't have that here. I don't assume you're contending it's a structural error, right? No. So I get back to my question. In what way, since we're under plain error review, in what way did the admission of the statement in question change the fairness of this trial? Sure, Judge. Judge, like the Ninth Circuit's Mira Estrada case, that was a battle of credibility. That's exactly what we had here. It attacked his credibility, and it implied guilt, Judge. That's what we think the error is. That's implied guilt. But, of course, you had all this other testimony that was put on and everything else that was brought in, your countering with your cross-examination and so on. In the totality of the evidence that came in, which is what we look at under plain error, in what way does it hurt your client? In other words, wasn't everything that was discussed in this simple statement brought out in other testimony? Wasn't it fought over? Didn't you do your best to refute all of that? What was actually said, specifically to Medtech Agent Pang, that's where the whole credibility issue occurred. Not anywhere else in the trial? Well, Your Honor, the agent gave his version of events. Mr. Osorio gave his version of events. There was no tape, no witnesses. He didn't even identify your client in that statement, did he? I'm sorry? Did he even identify your client in the statement he made? Your Honor, he was my witness. I called him. The violation occurred on cross-examination of my witness, which was Medtech Agent Pang. Let me tell you, Judge, as I see you looking, the table of contents of Day 2 of trial is misleading. It's incorrect. You need to follow what happened in the transcript because the table of contents is incorrect. Like I said, he was my witness, Judge, and her impermissibility at page 20, her admission, that occurred on cross-examination of Medtech Agent Pang, my witness. Your Honor, again to the weakness of the case, the government took the unusual step of requesting the lesser-included offense. We didn't request it. The government did. And I think that also speaks to how poor or how weak the case was. Your Honor, if I can transition to the lesser-included offense, we believe that Mr. Osorio was charged at count one of the indictment with 111A and B. And the instruction given by Judge Burry wasn't a lesser-included offense at all. It was just another way of finding guilt on 111A. Judge, the plain letter of the law, the plain reading of the statute, 111B, begins with the words, penalty enhancement. The comment to 8.3, Your Honor, one of the possible jury instructions, it also says, penalty enhancement. If you allege the penalty enhancement, consider 8.5 defenses. The lesser-included offense is 111A misdemeanor, not 111A felony. We believe Judge Burry marshaled the facts against Mr. Osorio. He used words like lesser-included for the jury, and only gave another method of finding guilt to 111A felony, which was already charged in the indictment. But if he hadn't given it, he might have gotten found guilty of the felony, since they found all of the facts that they're still given the beyond the reasonable doubt. So the one argument is your client was helped by it, not hurt by it. Your Honor, he could have been, yes, but we contend it was a weak case. And it's shown not only by the acquittals on count two and three, but also the government's request for the lesser-included offense. Your Honor, self-defense, this simple, uneducated man was stuck on the word assault, and in his mind, I didn't hit him. I didn't strike him. To use Judge Burry's words, hit, smack, hit. None of that occurred. But certainly, he tried to get away from the agent. Certainly. Okay. Is this plain error, though? Sorry? Is this plain error, again, because you offered a self-defense instruction. The court said they weren't going to give it, and you didn't preserve the objection. Your Honor, I felt I did. I made my argument. I don't recall using the words, I object. But I certainly wanted the self-defense argument. I think I told the judge that that was our theory of the case. Judge, certainly, many things happened. I tried to get away. Agent McNeil's testimony, we tumbled down the hill. The agent says, Mr. Osorio ended up on top of me. Mr. Osorio says, the agent ended up on top of me. Certainly, he's trying to protect himself from the punching. The agent said, right hand on left cheek and down on the ground. I can imagine he's getting hit on this side as well. So certainly, something occurred. But Judge Burry marshaled all the facts against us. He offered, he didn't give us our theory of the case. And so we, Your Honor, we think, based on not giving us our self-defense argument, we think reversal should come forth as well. Would you like to reserve the balance? Yes, I would. Thank you. Okay, thank you. Good morning. Good morning. May it please the Court, I'm Bob Miskell from the U.S. Attorney's Office in Tucson on behalf of the United States. Maybe why don't you just start out with the self-defense part of it? Because it seems to me that the defendant did say he didn't, you know, he didn't assault the officer. And so that was his defense. But isn't my understanding of the law is that the judge gives instructions on any, you know, you take the whole set of facts, and the whole set of facts were also what the prosecution's statement was. So wasn't there didn't those facts lend to giving a self-defense instruction? Under either version of the facts, whether it's the defendant's version or the agent's version. But the jury could not believe either of them, since the jury could say, okay, yeah, there was a dust-up, and they could find it differently. So, I mean, don't these facts lend themselves to that? But the facts from the agent, looking at the agent's testimony, he testified that the defendant initiated the assault. If a person initiates an assault, if a defendant initiates an assault, a self-defense instruction is not proper. So on that version of the facts, no self-defense instruction was proper. On the defendant's side, the defendant testified not only that he didn't hit the agent or strike him in any way, he said he was unable to hit him. So under that version  So you both went all or nothing. And so that's the only way that the judge could look at the facts. There was no evidence. But the jury didn't look at the facts that way at the end of the day by the verdict. So. Well, ultimately, they found an assault, albeit without bodily injury. And that's why, contrary to Mr. Sotero's argument, the lesser legally, the instruction the judge gave was legally a lesser-included offense. If you look at the structure of 111A, to actually have what the statute characterizes, the penalty enhancement, which this Court has characterized as a separate offense, you have to commit subsection A before you can get to subsection B. So it's a classic lesser-included offense. And because no evidence supported a self-defense instruction, it was proper for the court not to give a self-defense instruction. And as the defense counsel stated in one of the other jury instructions, in relation to one of the jury instructions, the defendant's defense in this case was that no assault occurred. Ultimately, it wasn't that he was acting in self-defense. It was that he did not assault the agent. Could I, if I were a defense counsel, could I argue in the alternative? You know, my first position out of the box is no assault occurred. But ladies and gentlemen of the jury, if you don't believe that and you think that there was some assaultive behavior, my client was acting in self-defense. Those aren't incompatible, right? No, you could, defense can always argue in the alternative. So why wasn't that, why, I mean, I know he didn't, the defense counsel didn't put the point in those terms. But isn't that in effect what he was requesting when he said, Judge, I'd like this self-defense instruction? He submitted a self-defense instruction before trial, and I think it was at a pretrial conference. He said, we're not sure the facts are going to meet that. Ultimately, that came to settling the jury instructions. Judge Burry, based basically on the argument I just made, said, I don't see self-defense here. I'm not going to give this instruction. And there was no counter-argument by Mr. Pence at that point. So are you saying he didn't preserve that? I think it's arguable. I think you could also find that he did preserve it by asking for the instruction. I mean, he clearly asked for the instruction initially. But when Judge Burry said, I don't see the facts that support this, there was no counter-argument saying, yes, these facts support it or these facts support it. And perhaps because the facts didn't support it. Because whichever version you believe, there was no self-defense involved. It was either the defendant initiated the attack or the defendant was unable to respond to the agent's attack. Neither of those implicate self-defense. I just want to make sure I understand the record straight. So the self-defense instruction was included in the defendant's package at the very beginning of trial. Defense counsel acknowledged it. I'm not sure yet if that's going to, the facts are going to support it. When it came time to settling the instructions, I guess, after the evidence closed, there was no renewal of the request. The judge just said, I'm not giving it, and there was no pushback from the defense. Is that what you're saying? That's correct, that's accurate. Okay, got it. And as far as the prosecutor's questions, it clearly, the standard is plain error, and there wasn't plain error at worst. The prosecution, assuming the defendant invoked his right to silence, which is actually unclear from the record. There's no real evidence of that. And in fact, the evidence his taking- But he never said anything? He read his rights. He was read his rights, and the agent said they didn't question him at that. He was read his rights out in the field right after the incident. The agent said they didn't question him at that time. There was no testimony about what happened. They then walked, I think the record was, for about two hours to get to a site where the vehicle was. Then at that location, they met by the EMTs. The defendant, in his testimony, said he did make a statement to Agent Peng that the victim agent had hit him. So he was talking to Agent Peng, and Agent Peng testified he doesn't remember that. Clearly, the government was introducing that as to impeach his credibility. The government never used those statements to imply guilt by silence. It was strictly to impeach- Well, am I understanding it correctly, though, that the defense started this by calling the witness? The defense called Agent Peng as a witness. So you didn't call Agent Peng to say he said nothing. It just ended up on cross-examination. Right. But technically, it was improper because the defendant had not yet testified to impeach him. Correct, that's the government's position. And under that scenario, there's no plain error because the order that the testimony comes in, I don't think you can use that to establish the kind of prejudice that is needed for plain error. Unless the court has other questions. Does anyone have any additional questions? We don't appear to. Thank you. Judge, very quickly, when I said I'm not sure whether I'm going to have the evidence to support a self-defense, I didn't want to tell the government whether or not I was going to put my client on the stand. But as I told Judge Bury, her witnesses are my witnesses. I had hoped to get it out using her witnesses, the government's witnesses. Well, I'm sure you know that we can't augment the record now with what you were thinking in your head. We have to go by what you said. Yes, Judge. But again, to qualify my statement would have been showing my hand to the government about whether I was going to present my client. Judges, the statements that were made, they were Ramirez, Estrada, akin to routine booking response questions and responses. It's a medical eval. It was quick. It was out on the field. In fact, it was out in the desert. And Agent Pang's testimony says that even in the middle of October when this happened, it's pretty warm out there. It's desert. It's treacherous. The government's, actually, my witness, Medtech Agent Pang, his testimony was a bit refreshing. Several times he says, I don't remember. I don't remember. The government offered him in rebuttal, and they said, did you feel his face? Did you feel his head? I think they used the word palpitations. It's at page 84 of the second day of trial. And he concludes by saying, I don't remember. I don't remember if he said anything. Mario said he did. He said repeatedly, I told him that the man who caught me hit me and was hitting me repeatedly. In fact, Agent McNeil's testimony says, yeah, I hit him. I hit him three times. Right hand, left side of the face. Any other questions, judges? None appear to be. Thank you both for your argument. This matter will stand submitted. Thank you.
judges: Callahan, Smith, Watford